CAHOONE, Ex parte. See Case No. 8,064.

## Case No. 2,293.
### CAIN v. GARFIELD et al.
[1 Lowell, 483.] [1]

District Court, D. Massachusetts. Oct., 1870.

BILL OF LADING—DELIVERY AT PARTICULAR PLACE—DEMURRAGE.

1. A bill of lading recited that the vessel was bound to a certain wharf in Charlestown, and undertook to deliver safely at the aforesaid port of Charlestown. *Held*, that the contract was to deliver at that particular wharf.

2. The lay-days under the above-mentioned bill of lading were to begin in twenty-four hours after arrival at the port and notice to the consignee. *Held*, the vessel had not arrived until she reached the wharf mentioned in the contract.

3. A tender admits the cause of action in admiralty as at law.

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

The cause was submitted to the court on a case stated. The libellant [Maurice Cain], as master and charterer of the schooner Thomas Clyde, took on board the vessel at Philadelphia a cargo of coal, to be delivered to the respondents [J. F. D. Garfield and others]. The bill of lading recited that the schooner was bound to "Charlestown, Fitchburg R. R. Wharf," and undertook to deliver the coal at the aforesaid port of Charlestown. Across its face was written that the shipment was subject to the demurrage clause of the captains' and vessel-owners' association. The parties agreed that the reference was to a clause lately adopted in the coal trade, which is printed in the case of The Boston [Case No. 1,671]. The schooner arrived at Charles River bridge in Charlestown at a certain time, and the master gave the defendants notice of his arrival, and they required him to go to the Fitchburg Railroad wharf, which is higher up the river. From the intervention of a Sunday and some accidents of navigation, it became important to the parties to ascertain whether the lay-days began to run in twenty-four hours after the notice, or after the arrival of the vessel at the wharf, and this suit was brought to test the question. The respondents tendered the amount which would be due on the latter theory.

J. W. Hudson, for libellant.
H. C. Hutchins and H. H. Currier, for respondents.

LOWELL, District Judge. The general rule is that the lay-days begin to run on the arrival of the vessel at the entrance of her dock or other place of discharge, and not when she has merely reached the port of delivery: Kell v. Anderson, 10 Mees. & W. 498; Parker v. Winlow, 7 El. & Bl. 942. The bill of lading now in use in the coal trade varies this rule. It was adopted for the purpose of requiring consignees to find a wharf and notify the master, and it perhaps assumes that the vessel can reach the wharf within a day after notice given. In this case notice by the master of his arrival, and by the consignee of the wharf, would seem to be unnecessary, because the wharf is designated in the contract itself, and the arrival there might be presumed to be known to the consignee. In the form in which the parties have made the contract, its construction seems to me to be, that, accidents excepted, the master was bound to deliver, and the consignee to receive, the cargo at the Fitchburg Railroad wharf, and that the master could not force on his lay-days by notifying his arrival within the limits of the port, when he might never reach his real destination, or not within the twenty-four hours. The notice by the master, as I have often decided (for this new form of bill of lading has given rise to a great deal of litigation), implies a readiness on his part to deliver so soon as the place of delivery shall be pointed out to

him. Here he already knew the wharf, and his freight would not be earned until he arrived there. It is not often that lay-days can begin before the carriage of the goods is ended. Whether, under the contract, in the absence of an agreement to go to a particular wharf, the freight is earned on arrival at the port and notice thereof, or in twenty-four hours thereafter; whether the vessel or the shipper takes the risk of unavoidable delays after that time, are questions that I have not yet had occasion to answer. In this case I hold the contract to mean that the schooner must go to the wharf mentioned therein before the master can truly say that he has arrived.

I am asked to go farther and refuse all demurrage, on the ground that no valid notice was ever given. This I cannot do for two reasons. 1. Because the notice which was given appears to have been acted on as sufficient except in point of time. 2. Because the tender admits a liability, and the whole case has proceeded on the idea that something is due.

Decree for the libellant for the sum tendered, without costs; for the respondents, for their costs.

NOTE [from original report]. The provision of a bill of lading, for delivery at a particular place, may be construed with reference to a usage of the consignees. Bradstreet v. Heran [Case No. 1,792]. As to the effect of quarantine regulations on delivery, see Bradstreet v. Heran, supra; Leland v. Agnew [Case No. 8,236].